U.S. v. Brown 22-6175. May it please the court, my name is Shira Keevel, I'm an assistant federal public defender and I represent Mr. Brown. Mr. Brown was convicted of having three rounds of ammunition in his pocket, and yet he received a statutory maximum sentence of 10 years. On appeal, he challenges five different applications of the sentencing guidelines, and I'm happy to answer the court's questions about any of them. My intention, though, is to start by discussing the pistol that police found in the woman's leopard print purse on the day of his arrest. The government did not present sufficient evidence that Mr. Brown actually possessed, knew of, or intended to control that pistol when he was arrested on March 2nd, 2021. Let me start by stating the obvious. This was his girlfriend's purse. It was in her, this was his girlfriend's gun, excuse me. It was in her purse at her feet when she was ordered to get out of the car with her drug pipes inside. Mr. Brown, in contrast, had already gone about his business, exited the car, gone into the mini mart without the purse, without the gun, and with his own drug pipe in his pocket. How then to connect Mr. Brown to this gun, not with DNA or fingerprints or any forensic evidence, not with any admission by him or statement by somebody with personal knowledge, and not with any evidence that he ever saw the gun. Counsel, do we review the possession question de novo or for clear error? Your Honor, this is a clear error review. The question is whether the district court could have concluded by a preponderance of the evidence that he was in possession, actual or constructive, of this firearm. And I don't believe that that could happen here. This court requires the government to prove not just a nexus to the location where the gun was found, but a nexus to the firearm itself, to the specific firearm, not just other firearms, not to items that are firearm adjacent. I would also point out this is not the typical joint occupancy case where you have a gun in the closet or a gun stowed in the back seat and people in the front. This is a case where the gun is inside a woman's purse at a woman's foot when the man is no longer in the car. So again, we have a number of cases that I've cited that I'd like to remind this court of. The sentencing cases, the government is concerned that the cases from this district, excuse me, this circuit, are all proof beyond a reasonable doubt cases, and they think that they are distinguishable, although I disagree. But we definitely have out-of-circuit cases that have looked at very similar questions that have said being gun adjacent is not enough. Having a different gun, having prior guns, having things related to guns like drugs, that is not enough. So the cases that I think are particularly persuasive here... Do any of those cases involve the defendants possessing ammunition that's consistent with the gun, possessing that? No. There's sort of an absence of those cases, but what we do have is we have a case where... Isn't that really important, particularly when the judge could very easily think he was lying when he said he just found those bullets someplace, as opposed to having a reason for having them? Well, I think that it would be guesswork in this situation. So the cases where you have someone with ammunition in his pocket, you also have it, Perez, from the Ninth Circuit, where the manufacturer markings on those bullets match. It's a little unclear whether it's ammunition in a clip inside the gun, but they match, so there's a way to correlate. Here, yeah, we have three 9mm bullets, but we also have a full... Yeah, so why the heck does he have three bullets in his pocket? I don't know the answer to that. Well, do you think it's unreasonable to infer that he had those bullets in his pocket because they fit the gun that he had his girlfriend keep in his purse? Is that... I don't think that's totally unreasonable and speculative. And when he lies or gives a reason for having the bullets, that sounds very strange. Doesn't that add further to the evidence against him that he had a great interest in that gun in the purse? That was the gun he was prepared to use. I think that that is taking the evidence, which is relevant, but taking it too far. Because we don't... He needs to actually intend to exercise control over the gun. Did he bring bullets to his girlfriend that day because she asked for some, and there were some left over that he stuck in his pocket? Why would he have three bullets in his pocket if the gun is fully loaded? I mean, there's all sorts of questions, and we don't have enough to connect. We have a country with many 9mm guns in it. Over half of the handguns produced in the United States are 9mm. We have him, he's found with lots of guns in the past, but we know that that's not enough. We know that if he just had bullets on him, the natural inference there is that he's connected to a gun. Do you think it's relevant that he keeps being found with guns or guns keeps being found in the cars he's been with? When he's with his son, when... I can't remember the exact circumstances, but this guy seems to be around guns a lot in the cars he's in, and maybe he's very clever about keeping them away from the driver's seat. Maybe that's pretty smart on his part. But you're saying that the judge couldn't draw inferences from this evidence that I don't think are far-fetched inferences. And, Your Honor, I think that in a universe where we are in now, where it has to be knowing of the other gun and intending to exercise control over it, and with the cases, I understand that the cases that are most persuasive here are not from this circuit, but they are published, and I find them persuasive. U.S. v. Kelso, the defendant was a passenger. There's a loaded gun within his reach behind the driver's seat in a bag of drugs. He's used weapons in the commission of prior offenses, and he admits that he's intending to facilitate the driver's sale of those drugs, and that is not enough. Was that a sentencing issue? Yes, that was a sentencing issue. That was U.S. v. Kelso. It's in my briefs, Ninth Circuit, 942 F. 2nd, 680. U.S. v., and let's say Houston, since it's the Fifth Circuit, the defendant is found in a motel room with his girlfriend. There are three guns in the motel room. He says, two of those are mine. The third one is found in his girlfriend's purse, and the Fifth Circuit says there is no evidence that that's his gun. That's a sentencing case. And then finally, United States v. Jones, which is in my reply brief, Seventh Circuit case. You have testimony from a drug customer that he never saw his supplier without a gun during their drug transactions, and the man never left his home without a gun. The police later find that person with guns, but there's something in the middle. They have to connect it to a specific drug deal that doesn't involve that person, and that predates them finding drugs, and they say, you know what, we don't have enough to say that on that occasion, where that customer was not part of the transaction, that there was a gun actually there. I understand these cases are not identical to this case, but they all involve the same thing, which is gun adjacency. Someone who's had guns in the past. Someone who always has guns. Someone who is intending to sell drugs which are associated with guns, which actually are in a bag with a gun. And the sentencing courts in these cases, the courts of appeals are saying that you can't guess. You need the sufficient nexus between this person and this gun to prove by a preponderance that it was his gun. Actual possession or constructive possession, either that he actually possessed it, which we certainly don't have here, or that he intended to exercise control. And new event, I mean, again, here, we don't have, we don't even have knowledge. We don't have evidence of that. It is too speculative. And in drawing, Your Honor mentioned a gun in a car when his son had been in there. You know, the issue that we have here is very similar to there. That was what I call the December passenger side gun. Yet again, we have a car with two people in it, according to the government. Yet again and again. And you draw inferences when things keep happening. Your Honor, I think it's... The common person, once it's his girlfriend, once it's the son. I'm sorry, I don't remember the specific text of the third occasion. But you can draw inferences when things seem to go with him. So perhaps, Your Honor, you want to draw inferences of knowledge. Like, you're surrounded by guns all the time. You haven't figured it out yet, so maybe he knows. But now we have to have him intending to exercise control over that gun. And what we have in this other situation, the government is convinced that my client was driving the car. We have a finding from the court that there was reckless endangerment with him driving the car. He doesn't say as much, but that's implied by the application of the reckless endangerment. And we have an adult human in the front seat with him and a gun that's tucked down between the door and the passenger side. It is associated with the other person. There's no reason to question that it is the other person's gun. And even if you are unwilling to accept that my client is always around these guns and doesn't know about them, especially if, you know, I understand he has ammunition in his pocket and his DNA was on a different gun, then we don't challenge that one. It's not enough for constructive possession in the modern day where we require that constructive possession involve intent to exercise control. The gun with his DNA on it, where was that found? That was found on the driver's seat in a car that they suspected him of having driven and left. You would still be making this argument, wouldn't you, if he did know that his girlfriend had a gun? That doesn't automatically make it his gun. Correct. Wouldn't you be making the same argument? Other than, I mean, you know, we put knowledge on the table. Yeah, the evidence would, I mean, I think my case would be weaker, but yes, you have to have both. Knowledge alone is not enough. It needs to be intent to exercise control over the gun as well. Can I ask, I'm going to jump to another issue. Yes. I had a question about the reckless endangerment. Yes. Enhancement. You cite cases applying the relevant conduct provision, sorry about this, 1B1.3A1, and why wouldn't the proper guideline, the 1B1.3A2, that is the course of conduct common scheme relevant conduct provision, not the one that requires the more specific connection to the offense? Yeah, and Your Honor, I can't find those cases. So I think part of the issue here is I have found no example, I don't believe the government has found an example of any court upholding the reckless endangerment enhancement on a course of conduct theory. No example where it wasn't in some way connected to the offense of conviction. Well, apart from cases, I mean, the guideline's there. Why wouldn't the guideline apply? I don't think it works grammatically, Your Honor. If you look at the two, A2 is, it's looking, I think it's too far of a stretch. We're looking for acts and omissions that were part of the same course of conduct. And then we're saying under Garcia, the fact that there was a gun at point A and a gun at point B means that there's a course of conduct of possessing guns. And then we're going to jump on and we're going to take any act that's connected to that, and I think that's too far. I don't think the grammar of the guidelines provision supports it. I don't think you can get from that part of A2 to that part of A1. I don't think the reasoning of Garcia gets there because it's so focused only on possession of firearm as the act that's part of the course of conduct and not into bringing in every single thing that's connected there. And I think the fact that we don't see it in the case law should be troubling to this court. This has been a long, the guidelines have been around for a long time. This part of relevant conduct hasn't changed. This part of reckless endangerment hasn't changed, and it's not being applied in this way. It isn't being applied in this way. I don't think that linguistically we can get there from A2, and I don't think that we have any, you know, we have a situation here where there was no, we have a guy with bullets in his pocket standing outside a convenience store who doesn't try to run. We also have a series of events where he's stealing cars, he's fleeing from the police. That does seem to be, there is some commonality to this string of events. I think if you do like a splatter chart of some sort, yeah, you have this here and this here, and then you have this other thing here that's also in here, but it's not, we're not talking about like a robbery spree or a conspiracy to possess drugs or any type of commonality like that where you're trying to, he's on a, seems to be on a crime spree. He keeps doing the same stuff. He takes, you know, he steals vehicles and then he flees from police. I mean, I don't know about splattered, but it does seem like he has this M.O. and why wouldn't that fit, I'm not sure about the grammar, but it seems to fit the words, same course of conduct. And, Your Honor, that's not the reasoning that the district court applied. The district court found a course of conduct based on possession of guns by someone who wasn't allowed to have guns. So this would be affirmance on an alternate ground, and I don't think it's appropriate. It wasn't argued below. I don't think there's a per se course of conduct. What was the endangerment then? What was the endangerment based upon? It was based on an incorrect understanding of how relevant conduct works, that it's not acts or omissions, but it's incidents. Well, that isn't really my question. If there was a reckless endangerment enhancement, what was the court concerned about? What did the court think Mr. Brown was doing to endanger others through his conduct? What was it pointing to? Wasn't it the high-speed chases? Yes, it was high-speed chases that had happened on prior occasions. And, Your Honors, there are state charges pending on all of these matters. We're not asking for Mr. Brown to simply be excused of prior criminal conduct if, in fact, he committed it. We're saying that this case, about three bullets, is a sentencing where it's the tail wagging the dog. It goes simply too far, even under the broad relevant conduct scheme that we have in the federal system. Thank you. I have a question not relevant to the merits of your argument. I loved your term, splatter chart. I'd never heard that before. Is that a common term? I think I probably made it up because I wasn't sure the right term. You might want to let the Oxford English Dictionary know that you're the originator of that term. Okay. I will.  Good morning. May it please the Court. My name is Danielle London, and I'm arguing here on behalf of the United States. Though Mr. Brown raises five separate issues on appeal, this Court is asked to answer just two questions. What, in any, of Dalton Brown's four-month crime spree could be considered relevant conduct to his conviction of being a felon in possession of ammunition? And, second, did the government meet its burden approving facts by a preponderance of the evidence, thus supporting its ruling on the base offense level and all of the applicable enhancements that it assessed at sentencing? Based on the totality of the record, and the government would emphasize that point, the District Court did not clearly err when it made its rulings at sentencing. And an important point that this Court has asked opposing counsel was, basically, what is the big picture for Mr. Brown? And what's important for the government to point out, and what the District Court had access to, was a lot of information establishing a very, very clear pattern of behavior and a course of conduct. Basically, the entire fall of 2020 and spring of 2021 into the winter involved Dalton Brown doing the same thing over and over and over again, thus supporting the enhancements that it applied. Let's start in December of 2020. An officer spots Dalton Dash Brown speeding, recognizes him by face, simply because he had been involved with Mr. Brown just a couple months prior involving a high-speed chase. He sees him, immediately tries to engage him, and he flees, and eventually is successful, leaving his vehicle at the home of his adult son's mother. A search warrant is obtained because, in plain view, stuffed between the passenger side and the door. And that's important because opposing counsel will characterize that as being more closely associated with the passenger. But it's actually clear from the record that that's more closely associated with the driver when you look at the entire point. And I'll get there, Judge. So let's think about it. So we're talking about a Marlin Rimfire rifle. It's .22 caliber. It's been stolen. It has been stuffed very similarly to the pistol that occurred in March between the passenger side and the door. This car is unoccupied when officers see it. And I'm responding to what Ms. Keeball wrote about in her reply brief. So to visualize this, it's closely associated with the driver because how could a rifle, a long rifle, with its grip pointed upward, have been placed there by a passenger in an unoccupied car? He could not have gotten past it, and he would have had to theoretically, you know, shove it in there maybe through a window or something like that. It's more closely associated with a driver getting out of an unoccupied passenger side and then placing it there and then exiting the car. But was there a passenger involved in the December incident? There was at some point, and that's what there's testimony from, or not testimony from, there's an interview done of the property owner where the car is left, which the officers knew is closely associated with Mr. Brown, said that two people arrived there. So it makes more sense for somebody in the driver's side to have stuffed it down there with the grip facing upward in plain view, similar to what happened in March, and then exiting the car. So to say that there's no association between a driver and that car, logically it makes more sense that it would have been the driver. Was this description elicited in the trial court? Yes, the description is in the police report as far as where it was stuffed. And the argument that given where it was stuffed, it couldn't have been placed there by a passenger, was that argued? That was not argued. That point was never made because the point was just that he didn't possess it. It never went further beyond that. And right now, the government counsel, I'm responding to the reply brief and that this is closely, like there's a pattern of guns closely associated with the passenger. And the government would point out that it actually looks more like it's associated with the driver based upon the totality of the record and that a grip is facing upward in plain view. And that another point that needs to be considered is that there's ammunition in the car that matches that gun. There's not ammunition because Dalton Brown has never seen the night of. But there is ammunition in that car that's placed both in the center console and in the little space in front of the shifter. So both of those places within clear reach access plain view to a driver. So it's very similar to what happens later on when you have ammunition on March 2nd. Could I ask you just to clarify one point? Now he pled guilty, so there wasn't a trial. Correct. All right. So this information about where the rifle was placed and so forth would have happened when? Sentencing? At sentencing, yes. This was attached as police reports as exhibits to a sentencing memorandum. Thank you. So furthermore, so let's step one. So we're talking about December. Let's go into February. And this is something that Mr. Brown never can really get his head around as far as arguing because it's so obvious and clear. Another high-speed chase, a stolen car this time, and this time Mr. Brown is also found with an FMP9 pistol with a high-capacity magazine, thus supporting his high base offense level of 20 because he is associated with that car. Again, high-speed chase. He's going so fast that the record indicates, and what the district court found, that he's losing contact with the ground going over railroad tracks trying to evade law enforcement. And this is never argued by Mr. Brown because possession is clear. There's DNA evidence both connecting him to the car by the steering wheel and also DNA evidence linking him to the gun itself. So that supports the enhancement for the reckless endangerment during flight and then consistent with the course of conduct of Mr. Brown, again, possessing firearms, again, ammunition, and also found in that car is a bunch of evidence that was recovered from a burglary just a few months before that. And all of the items of identification, his personal effects with his name engraved on them, I mean, there's no question, and Mr. Brown cannot in good faith argue that he did not possess that gun on February 11th. Okay, so then let's keep going. We're now into February 13th through 15th. Mr. Brown is in possession of a truck, again, stolen that was used in an armed robbery. He then flees from police at a low speed because the roads are completely snow and ice covered. So he flees from police. They still continue to give chase. He abandons entirely, again, with his girlfriend, the same girlfriend that's in the car in March, and then he's found in an ice-covered culvert, again, stolen car, flees from police, possessing ammunition. Okay, that gives us a continued, repeated pattern that Mr. Brown is engaged in. And we're still not even to the day that we got to March when Cushing police sees a car, again, known to be stolen, approaches it, knows Mr. Brown and his propensity to flee from police, sees his chance, sees his moment, that the driver's side is unoccupied. That's when he decides to approach Mr. Brown, coming out of the mini-mart, and that's when the three rounds are found in his pocket. But what's interesting, when the court asked defense counsel, or asked appellate counsel, he lies about the car. He denies anything about the car itself, not just the bullets. So the district court had information about a repeated lie from Mr. Brown that he possessed the stolen car. He denies that he had been in the car? Yeah, he denies knowing anything about a stolen car. And then he has a key fob for it in his pocket, and his girlfriend in the passenger seat. Okay, that confused me a little bit. You said when the officers approached, there was no one in the passenger seat. There was somebody in the passenger seat, it was the girlfriend, nobody in the driver's seat. I should actually clarify, he doesn't disclaim the car entirely. He disclaims knowing that the car is stolen, or knowing anything about a stolen car. Because he can, in good faith, he's coming out of it with a key fob in his pocket, and he says, I don't know anything about a stolen car. And he gives some story about a guy he got it from. And then at that point, that's also when he states that he got three rounds of ammunition, put it in his pocket. And then again, things that support his possession and knowing access to the other gun, there's not only the 9mm ammunition in his pocket, there's another extended magazine in the door. So that... Which door? The driver's side door. That driver's side door also has 9mm ammunition, and it's also contained in the record. Same as the ammunition in his pocket? Same ammunition. I don't have information about manufacture, so I can't represent that to the court, I just don't know that. But it is 9mm. Where was the purse? The purse was on the floor of the passenger's side with the grip facing upward outside of the purse. So it is in plain view. It was obvious to... As soon as an officer flashes a flashlight into the car, he sees it. And again, that car... Again, repeating the connection with enhancement that Mr. Brown is challenging, that car, again, was stolen. And the gun. Do you need... I mean, you've done this timeline recitation, but if we only had the March event, would there be enough there for constructive possession, or do you need all this other stuff that happened in December and February to get to constructive possession? I believe the court is asking me to make a concession as to whether they're sufficient based on the facts alone, but I can't do that because the repeated prior possession and the entire totality of the facts that the district court had access to is a factor, and it's very important when establishing somebody possessing something and having control. Well, I understand that, but if all we had was March facts, why isn't it more likely than not that the gun is the girlfriend's? It's in the leopard purse. Well, you also... And again, I hate to do this, but the girlfriend is in the record over and over again, and at no point does she have any ties to or familiarity with a gun, but just on the March facts, I can just give you a list. Let me try to explain where I'm trying to come from here. I'm trying to start with March and say, okay, based on what happened then, on that day, the ammunition in the pocket, in the side door, the purse with the gun, is that enough for constructive possession for Mr. Brown? And if the answer is yes, that's one thing. If the answer is no, well, but wait a minute. What about all these other things that had happened? Do we need all the other things that had happened? The government's position is no, that you do not need all the other things. Could you explain that then? Yes. I mean, I'd like you to zero in on March for now. Absolutely. So on March 2nd, Mr. Brown, first of all, let's talk about possession of the car itself. It's very clear from the record that he had possession of the vehicle, the container where the gun is located. He comes out. He has in his pocket three rounds of 9mm ammunition. There are no other firearms located in the vicinity, no firearms found in the car, nothing else besides that. Those three rounds of ammunition match the caliber of the gun that is found at the passenger side floorboard sticking out. It's also clear from the record that this is, again, a grip sticking out. That's the only part that's visible, consistent with someone sticking it in there, shoving it in there. And there's, of course, other things present within the purse that are more indicative of ownership of the passenger. And, of course, you have to actually search the purse in order to find those things, which would be different than somebody who's on the driver's side sticking it in there. So it's both in a car, so you're talking about a small area that's visible to anybody who's looking, that there's a grip there. Additionally, that same ammunition is found in the driver's side, present also in the magazine. So when you take all of those facts, those things are not clearly erroneous, even if the district court's finding was even possibly or probably wrong, that under the clear error standard, that this is not the type of evidence that this court should disturb. We had a number of cases cited to us earlier for the counterargument. Do you have anything to counter those cases? Well, I think those cases can be used to establish what the government's position is, because those cases do not stand for Mr. Brown not possessing. Well, do you have analogous cases where constructive possession was found in circumstances like this? Yes. The best example would be the Ninth Circuit out-of-district case, the United States v. Perez case. This was a jury conviction where the jury could infer intent where the caliber of the firearm found in the defendant's residence matched the caliber of ammunition that was in his pocket. That's the most analogous as far as facts go. Did he share the residence with anyone else? Yes. I believe the record was that his girlfriend lived there, but I could supplement that with more established facts as to who it was. You cited the case in your brief, I assume. Yes. The United States v. Perez case is cited in the brief. And with that, if the court has no additional questions. I had a factual question. Yes, Your Honor. On the stop where the gun was found in the girlfriend's purse, did the officers just see the car at the service station or had they been following him at all? The record indicates that he just saw it when he was doing patrol in the city of Cushing. Okay. So they never followed that car? No. No. And that he planned his stop. The police report indicates that the officer planned his stop in order to avoid a chase, knowing Mr. Brown's history of fleet police. Wait, wait, wait. That suggests he was following. No. He didn't wait for that car to leave. First, number one, what he saw first was a car that he knew was stolen because of a bullock. So the first time he saw the car was when it was parked at the convenience store. Correct. But he engaged right then and there as opposed to following, waiting for a traffic stop. Okay. Okay. That's it. And with that, we ask that this court would affirm the judgment. Thank you, counsel. Thank you, Your Honor. Case is submitted. Counselor excused. Are we adjourned or is this courtroom being used tomorrow? Oh, we just say we're in recess subject to call? I think we're adjourned, but okay.